## ANDREW M. WILEY

*v.*

## THE TOWN OF BRIMFIELD.

1. CONSTRUCTION *of an order laying out a public road, as to the time of meeting to hear reasons.* An order laying out and establishing a public road, was dated August 19, 1863. It recited the preliminary steps which had been taken, and then, that on the 6th of July, 1863, the commissioners personally examined the route proposed, and before determining to lay out the road, they fixed upon a time and place for meeting to hear reasons for and against laying out the same, giving eight days' notice thereof, and, having met at the time and place appointed, heard the reasons, and having determined to lay out the road, the commissioners, on the 27th of July, 1863, caused a survey to be made: *Held,* it sufficiently appeared from the order that the commissioners held their meeting to hear reasons for and against laying out the road, within ten days after the expiration of the twenty days from the time of posting up the petition for the road. While it was not explicitly stated when the meeting was had, it might fairly be referred to the immediately preceding date of the 6th of July, which it was admitted was the last one of the required ten days, rather than to the subsequent one of July 27.

2.  PUBLIC HIGHWAY—*when opened.*  When a common highway is laid out, surveyed and established, through a farm, and before the expiration of five years from that time the commissioners of highways open the fences of the farm so as to make a passway along the line of the road, but as the tenant of the owner of the land had crops growing on the farm, the commissioners gave the tenant permission to put in bars to permit persons to pass until the crops were matured: *Held,* that this was a sufficient opening of the road within five years to prevent it from being vacated under the statute. .

3.  OBSTRUCTING ROAD—*penalty, etc.*  In·a prosecution under the 94th section of the road law, for obstructing and continuing an obstruction, it must be shown that some *act* has been done by the defendant in violation of that section.  A mere *omission* to do some act or obey an order of the commissioners of highways, will not warrant a conviction under that section.  And where the evidence fails to show that the defendant obstructed the highway, a judgment against him is erroneous.  A failure to remove the bars put in the road by his tenant without his consent, or even knowledge, could not render him liable.

4.  NEW TRIAL—*terms in granting.*  When the circuit court offers a party a new trial on the terms that he pay the costs, and the offer is declined, and the motion is overruled and judgment rendered on the verdict, the party may still prosecute error, and urge the refusal to give proper, and the giving of improper instructions, as grounds of reversal.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

This was a prosecution for an alleged obstruction of a public highway, and for continuing such obstruction.

Among other questions arising upon the record, is the construction of the order of the commissioners, establishing the highway, which was as follows:   After reciting the presentation of a petition for the road, the order proceeds: "the commissioners of highways of said town did, on the 6th day of July, 1863, personally examine the route proposed in said petition for a road, to wit: commencing," etc., giving the route, "and having, before determining to lay out said road, fixed upon a time and place when and where we would meet to hear any reasons for or against laying the same, and having caused written notices thereof to be posted up in three of the

most public places in said town, eight days previous to the time of such meeting, and having met at the time and place appointed for hearing such reasons, and having heard such as were offered, and being of the opinion that such laying out is necessary and proper, and that the public interest would be promoted thereby, and having granted the prayer of said petitioners and determined to lay out said road, we did, on the 27th day of July, 1863, cause a survey thereof to be made by a competent surveyor, as follows:" with a description of the route. "It is, therefore, ordered and determined that a road be, and the same is, hereby laid out and established according to said survey and the plat hereunto annexed and made part of this order, which is hereby declared to be a public highway four rods wide, the line of said survey being the center of said road.

"In witness whereof, we, the said commissioners, have hereunto set our hands this 19th day of August, A. D. 1863."

Other facts connected with the case are sufficiently stated in the opinion of the court.

Messrs. JOHNSON & HOPKINS, for the plaintiff in error.

Messrs. WORTHINGTON & PUTERBAUGH, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a prosecution for the penalty prescribed by the statute for obstructing a public highway, and for continuing such obstruction, under sec. 94 of the township organization act, Sess. Laws 1861, p. 264.

It is first objected to the right of recovery, that the road alleged to be obstructed was not a public highway, because, in the proceedings for laying it out, the commissioners of highways did not hold their meeting to hear any reasons that might be offered for or against laying out the road, within ten days

after the expiration of the twenty days from the time of posting up the petition for the road, as required by sec. 53 of said act.

The order signed by the commissioners of highways, declaring the road laid out to be a public highway, states that the commissioners personally examined the route for the road proposed to be laid out, on the 6th day of July, 1863, and it is admitted that this was within the time prescribed; that that was the last one of the required ten days; but it is supposed that the meeting to hear reasons for or against laying out the road, and the determination of the commissioners to lay it out, did not take place until the 27th day of July, 1863, and that this appears upon the face of the order. We differ from the counsel for the plaintiff in error, as to the construction of the order in this respect.

The order bears date August 19, 1863; it purports to set forth the preliminary steps which had been taken, and contains but two other dates, those of the 6th and 27th of July. It recites that the commissioners did, on the 6th day of July, personally examine the route, and that they did, on the 27th of July, cause a survey thereof to be made by a competent surveyor.

It appears by the order that, before determining to lay out the road, a time and place were fixed upon for meeting to hear reasons for or against laying it out, of which eight days' notice, as required by the statute, was given; that the meeting was accordingly held, and the commissioners determined to lay out the road.

It is not explicitly stated when this meeting to hear reasons, and determination to lay out the road, was had, but we think it may be fairly referred to the immediately preceding date of the 6th of July, and that it is more properly referable to that date, than to the subsequent one, of July 27. We think the fair import of the language of the order is, that the commissioners, having, at a previous and another time, met to hear reasons for or against the road, and determined to lay it out,

they, at a subsequent time, to wit, July 27, caused a survey of the road to be made. The report of the survey by the surveyor, with the accompanying plat, bears the date of July 27, and we must construe that date in the order as referring exclusively to the time of the survey of the route of the road.

This objection to the validity of the proceedings in laying out the road, we do not consider to be well taken.

It is next objected, that the road was not opened within five years after it was laid out, and that therefore it became vacated under section 17 of said act, which declares that, unless a highway, laid out by order of the commissioners, shall be opened within five years, the same shall become vacated. The order establishing the road was made August 19, 1863. On the first day of February, 1868, the commissioners served a written notice on Wiley to remove his fences. He not doing so, on the first day of July, 1868, they opened a passage way through his two fences, sufficiently wide to admit of the passage of teams through, and left the road so opened. It was opened elsewhere, its entire extent. A tenant of Wiley having a crop upon the premises, the commissioners at the same time gave him permission to put in bars across the openings, provided he would not hinder any one from passing through, and the tenant subsequently put them in.

We regard the road as having been sufficiently " opened " to save it from the effect of becoming vacated, under the above provision of the statute.

There is a further error assigned in the giving and refusing of instructions.

This prosecution was not under sec. 90 of said act, which declares that, if the owner of any inclosed land through which a public highway shall be laid out, shall not remove his fences after sixty days notice in writing to do so, by the commissioners of highways, they shall cause the same to be removed, and such owner shall forfeit to the town the sum of fifty cents a day for every day he shall permit his fences to remain, after the expiration of the sixty days. But it was under sec. 94, which

provides, "If any person shall obstruct any public highway, by falling a tree or trees across the same, by encroaching upon or fencing up the same, or by placing any other obstruction therein, or by digging a ditch across the same, he shall forfeit to the town for every such offense a sum not exceeding $10, and a sum not exceeding $1 for every day he shall suffer such obstruction to remain after he shall have been ordered to remove the same by a commissioner or overseer of highways of the town."

Another notice to remove obstructions, which does not appear to have been in writing, was given to Wiley by a commissioner of highways, March 4, 1870.

This prosecution is for a penalty for obstructing a public highway, and continuing such obstruction from March 4th, 1870, to April 22d, 1870.

This section, under which the proceeding is had, contemplates that some *act shall be done* by the offender by placing an obstruction in a public highway, and he is subject to the penalty for suffering such obstruction by him placed in a highway to remain after being ordered to remove it. The penalty is not incurred under this section where there is nothing more than an *omission* to do an act. Section 90 is the one which affixes a penalty for an omission to remove fences erected before the laying out of the road. There does not appear to be any proof that Wiley did any thing in the way of obstructing the road, but that he only failed to remove his fences. The fences remained as they were when the road was laid out. The only change in them was made by the tenant of the plaintiff in error, in putting in bars, with the express permission of the road commissioners at the time they opened the passage way through the fences, and which was done, so far as appears, without the knowledge or concurrence of Wiley. During all this while, the land was in the occupancy of his tenants.

The evidence raised a fair question, whether the cause of action, if any there was, against the defendant, was not solely under sec. 90 for not removing his fences after sixty days notice

312          WILEY *v.* TOWN OF BRIMFIELD.          [Sept. T.,

Opinion of the Court.

in writing, and not under sec. 94 for placing an obstruction in the road, and continuing such obstruction, under which last section the defendant was prosecuted. And the law, as applicable to such question, the defendant was entitled to have given to the jury, which he asked by his 4th and 13th instructions, which were refused, and were as follows :

"*Four.* If the jury believe, from the evidence, that the only obstructions which the defendant has placed or continued upon the road in question is the continuance of his fences as they stood before the road was laid out and opened, then they will find for the defendant.

"*Thirteen.* If the jury do not find, from the evidence, that the defendant placed an obstruction across said highway, after the same was legally opened by the highway commissioners of Brimfield, then the defendant is entitled to a verdict; and if they do not find that the defendant continued such obstruction by him placed after being notified to remove, then the plaintiff is not entitled to verdict for continuing such obstruction."

And for the same reason, the last clause of the second instruction given for the plaintiff should not have been given, which was as follows :

"And if the jury believe, from the evidence, that the commissioners of highways of the plaintiff notified the defendant to remove his fences within sixty days, and he refused to do so, the plaintiff can recover in this action."

We are of opinion there was error in the refusal of the above instructions asked for the defendant, and in the giving of the last clause of the second instruction for the plaintiff.

On motion of the defendant for a new trial, the court granted him one, on the payment of all costs. Not choosing to avail himself of a new trial on such terms, judgment on the verdict was rendered against the defendant.

It was but optional with the defendant to take a new trial upon the terms imposed, or not. His not seeing fit to do so, did

not preclude him from bringing the record here and having the judgment reversed for any error of the court below in the refusing or giving of instructions. This would result from the decision in *Smith* v. *Gillett,* 50 Ill. 292, which is to the effect that, in order to take advantage of such an error in this court, it was not necessary that a motion for a new trial should have been made in the court below.

For the error above indicated, in the refusal and giving of instructions, the judgment is reversed and the cause remanded.

*Judgment reversed.*