CYRUS WEBB V. THE BOARD OF COMMISSIONERS OF
BUTLER COUNTY *et al.*

1. HIGHWAYS — *Nonuser* — *Construction of Statute.* The statutory provision concerning the vacation of public roads on account of nonuser was adopted from an Ohio statute after it had been judicially construed in that state, and that construction must be held to have been adopted here.

2. ———— *Not an Unopened Road.* A public highway, legally established, ordered to be opened, and one-half of which at least was unobstructed, and used to some extent for public travel, is not an unopened road, within the meaning of ¶ 5516 of the General Statutes of 1889.

3. ———— *Not Narrowed.* The fact that an adjoining landowner, over whose land one-half of the road was laid, encroached upon the highway with a fence, or by cultivation and use, will not lessen the right of the public to use the entire width of the highway when the increased travel and the exigencies of the public make it necessary.

*Error from Butler District Court.*

ACTION by *Webb* against the *County Board* of Butler county and others, for an injunction. At the June term, 1890, the defendants had judgment, on demurrer to plaintiff's evidence. Plaintiff comes here. The opinion states the facts.

*Redden & Schumacher*, for plaintiff in error.
*Shinn & Knowles*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by Cyrus Webb against the defendants as public officers, to enjoin them from removing fences and obstructions, and from opening up a supposed highway over the plaintiff's land. His petition sets forth the authorization and establishment of a highway, 40 feet wide, on the western line of his premises, in 1872, one-half of which was laid upon the plaintiff's land. He alleged and contends that the road was never actually opened

over his land, but that a hedge had been planted along the west line, which had been used as a fence for several years, and that the land had been plowed and cultivated up to the fence for more than 10 years.   The evidence offered by plaintiff tended to show that for 17 years there had been no travel over the land in question, except where parties passing along the west line had driven upon the cultivated land to escape the mud in the road; that he had cultivated his land up to the west line for several years, and had maintained the fence on a portion of the line most of the time since he had purchased it.   It was further shown, however, that there was a traveled road along his west line, which was considerably used by the public.   At the close of plaintiff's testimony, a demurrer was sustained to the evidence, and upon this ruling error is assigned.

We think the plaintiff has no cause to complain.   His own allegations show that a road was established and ordered to be opened.   In his petition it is averred that

"In the year 1872, proceedings were had relative to laying out a public road on the lands described as follows: [ Here follows description of road,] which ran past and included the west line of plaintiff's land above described; and the said board of county commissioners pretended to appoint viewers of said road, and adopted a favorable report made by said viewers, and in the month of July, 1872, ordered said road to be opened."

Although plaintiff speaks of it as a "pretended road," nothing is alleged to show irregularity in the action of the board, nor invalidity in the order which was made.   No proof was offered which tended to show that the road was not legally authorized and established.   It is contended, however, that the road, if established, has become vacant by reason of nonuser, under the provision of ¶ 5516 of the General Statutes of 1889, which reads as follows:

"That any county road, or part thereof, which has heretofore or may hereafter be authorized, which shall remain unopened for public use for the space of seven years at any one

time after the order made or the authority granted for opening the same, shall be and the same is hereby vacated, and the authority granted for erecting the same is barred by lapse of time."

This provision was adopted from an Ohio statute, and an early construction given to it by the supreme court of that state must be held to have been adopted here. That court decided, in 1850, that the statute applied only to roads authorized, but which have never been opened or used. (*Peck v. Clark*, 19 Ohio, 367; *City of Topeka v. Russam*, 30 Kas. 550.) The road in question cannot be regarded as unopened or unused. When it was authorized and established, the country through which it lay was open and unobstructed. In *City of Topeka v. Russam*, supra, it is said that

*1. Highways— nonuser—construction of statute.*

*2. Not an unopened road.*

"Whenever a road is located and established, and everything else is done which either the law or necessity requires to be done, in order to render the road open for public use, the road is not then an 'unopened' road within the meaning of chapter 150 of the Laws of 1879."

In the same case, in speaking of the opening of the road, it is said :

"It was located and established in full compliance with the law; and there was nothing to prevent the public from traveling over it. It was not closed or inclosed. It was not shut up. It was not obstructed. And if the road was not closed or inclosed or shut up or obstructed, it must have been opened; and a road that is open cannot well be an unopened road."

In *Wilson v. Janes*, 29 Kas. 234, 250, the same subject was under consideration, and it was said that

"A public highway might be opened without anything being done by the road overseers for that purpose. The people themselves along the line of the road might open it, or the public travel might at once take possession of the road and use it. And whenever a public road is traveled, it is in fact opened, although nothing may have ever been done by

the road overseers for the purpose of opening it. No formal opening is ever required. It is true it may be formally opened by the several road overseers along the line of the road, but it may also be informally opened by themselves or by others, or it may be opened in fact by the public travel taking possession of it and using it. . . . A road may be opened without either notice or work; travel alone upon such a road would be a sufficient opening of the same."

Here, the road was not only opened, within the meaning of these authorities, at the time it was established, but it has been actually used and traveled since that time, and was in use by the public when the present action was brought.

There is no claim that the west half of the road, as established, was ever obstructed or closed. It was open the full length of the west line of plaintiff's premises, and he has shown that there was considerable travel over the same. Having been legally authorized, laid out, and used, it is, in legal contemplation, a public highway. The fact that the public may not use or travel over the full width of such a highway will not operate to narrow it.

3. Highway not narrowed.

It is frequently the case that the full width of country roads is not improved or used, for the reason that the necessities of the public for the time being do not require it; but such limited use will not lessen the right of the public to use the entire width of the highway when the increased travel and the exigencies of the public make it necessary. It has been held, that where an easement is obtained by adverse use alone, the extent of the easement must be measured by the actual use; but this rule has no application to a road of a certain width authorized and established in pursuance of statute. It is clear that the vacation statute invoked was never intended to vacate a part of the width of a road not actually used where there is travel over the entire length of such road. The encroachments by the plaintiff upon this highway gave him no rights as against the public. In *Driggs v. Phillips*, 103 N. Y. 77, it was held that

"The occupation of a portion of a highway by an individ-

ual is a mere obstruction and nuisance, for which no lapse of time will enable him to prescribe, and no acquiescence on the part of the highway officials of the town will deprive the public of the right to use the whole highway, or in any degree lessen the duty of such officials to remove the obstruction when that removal is necessary."

In *Humphreys v. Woodstown,* 48 N. J. L. 595, it is said that

"A road may be opened, used and worked throughout its entire length and yet not used and worked on every foot of its entire breadth, and if the *locus in quo,* being within the lines of the road, was not actually passed over by the wheels of vehicles, it would not therefore be vacated.   It has been settled in this state that encroachments on a highway cannot be legalized by lapse of time."

The supreme court of Maine, in considering the|same question, held it to be sound law and good sense

"that the public is entitled to a way three rods wide, as originally laid out, notwithstanding the wrought part of it, and the part actually used by travelers, may have been very much less than that; and that the traveled part may from time to time be widened or otherwise improved, as the growing wants of the public may require, provided such improvements are kept within the limits of the way as originally laid out." (*Pillsbury v. Brown,* 82 Me. 450.)

See, also, *Commonwealth v. McNaugher,* 131 Pa. St. 55, and *Town of Sumner v. Peebles,* 32 Pac. Rep. (Wash.) 221; Elliott, Roads & St. 668.

We think the testimony of plaintiff did not sustain his right to an injunction, and that the court ruled correctly in sustaining the demurrer to the evidence.

Judgment affirmed.

All the Justices concurring.