### BAKER v. HOGABOOM *et al.*

1. A highway is opened to its full width of two rods on each side of the section line where the county commissioners declare it opened, and the public use it, though only on one side of the section line.

2. Comp. Laws, § 1305, providing that, when any road is laid out through inclosed and cultivated land. 20 days' notice shall be given the owner of the land to remove his fence, provid. d that no inclosure shall be ordered open between April 1st and October 1st, does not apply where, after the county commissioners declare a highway open along a section line, and the public use it, though only the part on one side of such line, the part on the other side of such line is inclosed with the other land on such side.

3. Comp. Laws, § 1225, providing that a highway which shall not be opened and used in six years from the time of its being laid out shall cease to be a highway, does not apply where a highway along a section line is declared open by the county commissioners, and the public use it, though only on one side of such line.

(Opinion filed January 18, 1900.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge

Action by Annie M. Baker against Milo Hogaboom and others to recover damages for the removal of a fence and the destruction of growing corn. Judgment for plaintiff. Defendants appeal. Reversed.

The facts are stated in the opinion.

*Keith & Warren,* for appellants.

*A. B. Kittredge,* for respondent.

CORSON, J. This is an action by the plaintiff to recover damages of the defendants for the removal of a fence on her premises, and for destroying a quantity of growing corn thereon. Verdict and judgment for the plaintiff. From the judgment and order denying a new trial, defendants appeal.

The plaintiff was the owner of a quarter section of land in Minnehaha county, bounded southerly by the county line between that county and Lincoln county. The defendants were officers of Springdale township, Lincoln county. The land in controversy was fenced, the fence extending along the southerly section line of the quarter section; and the land so inclosed was planted in crops. The plaintiff's grantor and husband entered the land in 1880, and received a patent therefor in 1881. On the 8th day of January, 1879, the county commissioners of Minnehaha county laid out a public highway on the section line, extending south from the city of Sioux Falls, commencing at the southwest corner of Section 16, to the Lincoln county line, and thence east on the said line about 80 rods to intersect the established road from Lincoln Center. Within the limits of the highway so laid out by the county commissioners, but southerly of the section line, and within two rods of that line the public have traveled since the laying out of the road, and the road

was so traveled at the time of the alleged trespass by the defendants. In the year 1888 the plaintiff constructed a wire fence on the section and county line on the southerly side of her land about one foot from the section line running east and west from her southwest corner a distance of about 62 rods. The fence remained on this line, until removed by the defendants, in 1898, with the exception of one year, when it was moved north about two rods, and afterward moved back on the section line. In May, 1898, the defendants Hogaboom and Eckert, as supervisors of Springdale township, in Lincoln county, and defendant Skinner, as road overseer, removed the plaintiff's fence as an obstruction, and plowed and graded the highway to a width of nearly two rods on the Minnehaha county side of the line. It was for these acts of the defendants in removing plaintiff's fence and working the said claimed highway that this action was brought  On the trial the court directed a verdict for the plaintiff, leaving the jury to fix the amount of damages only. The circuit court, after stating to the jury that the public has a right, through the proper officers, to locate a highway upon a section line, instructed them as follows: "At the same time it is the law of this state that in actually opening up a highway and using it the road supervisors cannot tear down one's inclosure where he has inclosed land; and the road is to interrupt that inclosed land, without giving twenty days notice in writing and cannot lawfully open an inclosure between the 1st of April and the 1st of October. Therefore the court instructs you that, as these defendants went upon this strip of land which the plaintiff had inclosed, and had cultivated for a good many years, without objection being made by the public, the 23d day of May, and tore down the fence, and graded

a highway, they were trespassers in doing it at that time, and the plaintiff is entitled to recover." Counsel for appellants contend that by the act of the county commissioners in 1879 in declaring the highway open, and its use by the public, this highway was opened along the county line to the width of 66 feet, or two rods on either side of the section line, and it continued and remained a legal highway to that width, notwithstanding the actual traveled roadway was on the southerly side of the section line in Lincoln county and that the inclosure by a fence of the strip northerly of the section line, two rods in width, was an obstruction to the highway, which the defendants, as town officers, had a legal right to remove for the purpose of grading and repairing the highway. The respondent insists that the proposed highway northerly of the section line in Minnehaha county was never actually opened, and that the plaintiff had the legal right to inclose that portion of the proposed highway northerly of the section line in Minnehaha county, and hence that that fence could not legally be removed until plaintiff had first been given 20 days' notice of the intended opening of the highway, and in no event could the road be lawfully opened through an inclosure between the 1st of April and the 1st of October, as provided by Section 1305, Comp. Laws. We are of the opinion that by the use of the highway, so laid out by the county commissioners of Minnehaha county, by the public, the highway was opened its entire width along the southern boundary of the plaintiff's land. It is not necessary for the county commissioners, in opening a proposed highway upon a section line, where the land is not inclosed, to cause any formal acts to be done upon the ground in order to constitute a legal opening of such highway. It is suf-

ficient for them to declare the same open, and, if the same is used by the public as such highway. it is opened, within the meaning of the law, to its entire width, 66 feet; and it is immaterial whether the actually traveled roadway extends over the whole 66 feet in width or is confined to one side of the center of the highway as in the case at bar. In this state the actual roadway used rarely extends over a few feet in width, but in contemplation of law the public are in possession and enjoyment of the highway 66 feet in width. At the time this highway was established, in 1879, the country in the vicinity of this highway was open, uninclosed country, and so remained for a number of years thereafter. The plaintiff, therefore, in inclosing the said portion of the highway in 1888, did so without authority of law, and in violation of the rights of the public; and the fact that the public officers permitted this encroachment by the plaintiff upon the highway for a number of years did not confer upon her any right to inclose or cultivate the same. Maire v. Kruse, 85 Wis. 302, 55 N. W. 389, 26 L. R. A. 449; Webb v. Board, 52 Kan. 375, 34 Pac. 973. The supreme court of Kansas in Wilson v. Janes, 29 Kan. 234, speaking upon this subject, says: "A public highway might be opened without anything being done by the road overseers for that purpose. The people themselves along the line of the road might open it, or the public travel might at once take possession of the road, and use it. And whenever a public road is traveled it is in fact opered, although nothing may have ever been done by the road overseers for the purpose of opening it. No formal opening is ever required. It is true that it may be formally opened by the several road overseers along the line of the road, but it may also be informally opened in fact by the public

travel taking possession of and using it. * * * A road may be opened without either notice or work. Travel alone upon such a road would be a sufficient opening of the same." Webb v. Board, *supra.* We are of opinion, therefore, that the learned circuit court was in error in holding that Section 1305 was applicable to the case at bar. That section provides that when any road is laid out through inclosed and cultivated land, notice of 20 days shall be given to the owner or occupant of the land through which the road is laid to remove his fence, provided that no inclosure shall be ordered open between the 1st day of April and the 1st day of October. The highway in question having been opened in 1879, no such notice was necessary for the purpose of removing obstructions placed within the highway since the same was laid out and opened. Whether or not that section is applicable to highways laid out on section lines in any case, we do not deem it necessary now to decide.

It is insisted on the part of the respondent that, as a portion of the highway as laid out northerly of the section line was never traveled by the public nor formally opened within six years after the same was laid out, it ceased to be a highway, under Section 1225, Comp. Laws, which provides that every highway which may hereafter be laid out, and which shall not be opened and used within six years from the time of its being laid out, shall cease to be a highway for any purpose whatever. But this section is evidently not applicable to this case, for the reason, before stated, that by the use of this highway by the public, although only on one side of the center of the same, it was, in contemplation of law, opened and used to the full width of such highway as laid out. The plaintiff, in inclosing this portion of the highway after the same had been laid

out and opened by the public, was guilty of obstructing the highway. As before stated, she had no right to inclose the portion of the highway lying within two rods of the center of the same. The proper highway officers, therefore, were authorized to remove any obstacles to the highway within those limits. For the error of the learned circuit court in its instruction to the jury, the case must be reversed, and a new trial had. Numerous other errors were assigned, involving the rulings of the court in excluding evidence offered on the part of the defendants, but, as these questions may not arise on another trial, we do not deem it necessary to pass upon them. The judgment and order denying a new trial are reversed and a new trial is ordered.